UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

May 29, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Jack B. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-0998-CDA

Dear Counsel:

On April 13, 2023, Plaintiff Jack B. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 12 & 13). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.    **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on September 17, 2014, alleging a disability onset of June 1, 2012. Tr. 181–84. Plaintiff's claims were denied initially and on reconsideration. Tr. 127–33. On April 27, 2017, an Administrative Law Judge ("ALJ") held a hearing. Tr. 34–80. Following the hearing, on August 4, 2017, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 13–33. The Appeals Council denied Plaintiff's request for review of the decision. Tr. 5–10. Plaintiff then petitioned this Court for review, and on January 21, 2020, this Court remanded the case to the Commissioner. Tr. 1060–75. The Appeals Council, on May 5, 2020, vacated the unfavorable decision and remanded the case back to a different ALJ for further proceedings. 1077–80. On April 20, 2022, the new ALJ heard Plaintiff's case and determined on June 1, 2022, that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 947–83. That decision constitutes the final, reviewable decision of the SSA. *See Sims v. Apfel*,

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on April 13, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II. THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff, since "June 1, 2012 and through October 5, 2016, [] engaged in substantial gainful activity during the following periods: June 1, 2012 through June 30, 2012[.]" Tr. 953. However, the ALJ determined that "there was a continuous 12-month period during which the claimant did not engage in substantial gainful activity." Tr. 953. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "cirrhosis of the liver; obesity; thrombocytopenia; degenerative disc disease of the lumbar and cervical spine; and adjustment disorder[.]" Tr. 954. The ALJ also determined that Plaintiff suffered from the non-severe impairments of left shoulder supraspinatus tendinosis, esophageal varices, chronic gastritis, portal hypertensive gastropathy of the stomach, status post ventricular septal defect repair, asymptomatic and mild hypercholesterolemia, right bundle branch block, hypertension, sleep apnea, scoliosis in the lumbar spine, and diabetes. Tr. 954. At step three, the ALJ determined that Plaintiff "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 955. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) with occasional climbing ramps and stairs and occasional stooping, crouching, kneeling, and crawling. He could never climb ladders, ropes, or scaffolds. He could balance on even surfaces and stand and walk on level terrain. He had to avoid all exposure to hazards of unprotected heights and dangerous, unguarded machinery. He was limited to occasional overhead reaching and occasional cervical extension (looking up) for overhead work, and he was capable of frequent reaching in all other directions as well as frequent handling and fingering. He was capable of using judgment to make simple work-related decisions, dealing with occasional changes in a routine work setting, and understanding, remembering, and carrying out simple instructions. He could sustain simple tasks on a regular and sustained basis to complete a normal workday and week, with customary breaks.

Tr. 958. The ALJ determined that Plaintiff was unable to perform past relevant work in a composite job made up of the following: operating engineer (DOT[3] #859.683-010, medium/SVP 6), highway maintenance worker (DOT #899.684-014, medium/SVP 3), and laborer (landscape) (DOT #408.687-014, heavy/SVP 2), but could perform other jobs that existed in significant numbers in the national economy. Tr. 971–72. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 974.

### III.  LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff raises one primary argument on appeal: that the ALJ ran afoul of the holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Plaintiff contends that the ALJ's RFC did not include any "corresponding limitation" nor did the ALJ provide any explanation for the lack of limitation for Plaintiff's moderate concentration, persistence, or pace ("CPP") limitation. ECF 11, at 9. Defendant counters that that ALJ's RFC properly accounted for Plaintiff's mental impairments. ECF 12, at 7. This Court's review is confined to whether the ALJ's decision is supported by substantial evidence and whether correct legal standards were applied. *Craig*, 76 F.3d at 589.

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilit[y]

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio*, 780 F. 3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how [the] plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Here, at step three, the ALJ observed that in Plaintiff's function report, he "indicated that he could drive, shop, and handle money." Tr. 957. Plaintiff admitted to visiting friends at the firehouse, shopping in stores, and could fully handle changes in routine. Tr. 966. However, the ALJ also took note of Plaintiff's reported "difficulty with concentration, completing tasks, and following directions[.]" Tr. 957. The ALJ examined that "[o]n testing in April 2015, [Plaintiff] scored 24/30 on the mini mental status exam with his main impairment being inability to subtract by 7s[.]"[4] That same exam, however, "indicated that [Plaintiff] could follow three-step directions and that he had no perceptual or thought disorder." Tr. 957. Based upon these observations, and other evidence in the record, the ALJ concluded that Plaintiff "can sustain simple tasks to complete a normal workday/week and can carry out simple instructions." Tr. 957. In assessing the RFC, the ALJ limited Plaintiff to "using judgment to make simple work-related decisions, dealing with occasional changes in a routine work setting, and understanding, remembering, and carrying out simple instructions." Tr. 958. The ALJ further concluded that Plaintiff "could sustain simple tasks on a regular and sustained basis to complete a normal workday and week, with customary breaks." Tr. 958.

Plaintiff correctly observes that the ALJ "must either include a corresponding limitation in the RFC assessment or explain why no such limitation is necessary." ECF 11, at 9. Contrary to Plaintiff's assertion that "remand is warranted because the ALJ failed to address" Plaintiff's moderate limitation in CPP, the Court finds that the ALJ did not commit harmful error at this step and provided substantial evidence for this Court to review. ECF 11, at 11. Specifically, the ALJ's in-depth review of the record, robust narration of Plaintiff's mental health records, and reliance on

---

[4] Tr. 957. A score of 24/30 is indicative of only a mild cognitive impairment, per the ALJ's adoption of the examiner's opinion. Tr. 966 (referencing Ex. 12F, at 4).

multiple state agency psychologists' opinions when crafting the RFC provided ample support for the CPP limitations incorporated therein.

First, the ALJ reviewed the evidence, establishing a proper record to review. Plaintiff was diagnosed with adjustment disorder with depressed and anxious mood. Tr. 965. However, the ALJ opined that the record "shows that [Plaintiff] could use judgment to make simple work-related decisions; deal with occasional changes in routine work setting; understand, remember and carry out simple instructions; and sustain simple tasks to complete a workday/week with customary breaks." Tr. 965-66. Plaintiff had no mental health treatment during the relevant time period but received some medications for his symptoms due to his adjustment disorder. *Id.* The ALJ found that the lack of mental health treatment, crisis treatment, and hospitalizations for psychiatric reasons, lessened the persuasiveness of Plaintiff's allegations regarding severe psychological symptoms. *Id.* The ALJ further noted that Plaintiff's adjustment disorder is a severe impairment, despite no reported mental health treatment history, and therefore prevents him from performing his past skilled work. Tr. 968.

The ALJ also examined Plaintiff's "most extensive mental status exam . . . ." Tr. 966. The exam showed cognitive issues that could limit Plaintiff to simple work but no abnormalities precluding sustained work activity or preventing him from understanding, remembering, carrying out, and staying on task to complete simple instructions. *Id.* (referencing Ex. 12F). Plaintiff, on exam, had a mildly depressed mood associated with his physical pain, Tr. 649, and his affect was unremarkable, Tr. 966. Plaintiff was casually dressed, pleasant, and cooperative on exam with clear and focused speech. *Id.* During the exam, there "were no indications of a perceptual or thought disorder, and [Plaintiff] gave no indication of intent to hurt himself or others." *Id.* Plaintiff's insight and judgment were fair, he was alert and oriented, and his intellectual ability was estimated as average. *Id.* Plaintiff's mini mental status exam showed that his long-term memory was intact and that he could follow three-step directions. *Id.* Plaintiff indicated that he was independent in performing all his activities, did light jobs around the house such as cleaning and cooking, visited his son, and reported no problems in his ability to get along with others. *Id.*

In April of 2015, the state agency psychologist, Dr. F. Ewell, concluded that Plaintiff had a moderate limitation in CPP with 1-2 episodes of decompensation. Tr. 967. The ALJ found Dr. Ewell's opinion persuasive as it related to the moderate CPP finding. Tr. 967. Dr. Ewell primarily examined Plaintiff's physical limitations within the activities of daily living ("ADLs") and noted that he shops with his son every two weeks and has some stress. Tr. 89. Dr. Ewell observed that Plaintiff's ADLs had "many limitations due to physical issues . . . [and he had] difficulties with concentration." Tr. 91. Dr. Ewell opined that Plaintiff's "concentration and persistence [was] limited by psych[iatric] symptoms" related to Plaintiff's "develop[ment of] emotional problems in response to [his] spinal cord disease." Tr. 96. Dr. Ewell concluded that Plaintiff had little mental health treatment, as he was only recently diagnosed with adjustment disorder due to development of "some symptoms of depression and anxiety largely in response to physical health problems." *Id.* "[T]here were no indications of a significant problem during the [mental status exam,]" and, although Plaintiff scored a 24/30, it was still within the normal range and score but lowered due to

difficulty with serial 7s.  *Id.*  In the end, Dr. Ewell concluded that Plaintiff "[m]aintains ability to perform tasks from a mental health standpoint."  *Id.*

Then, the ALJ assigned persuasive value to Dr. Patricia Cott's opinion as it relates to a moderate CPP limitation.  Tr. 967.  In August of 2015, Dr. Cott also concluded that Plaintiff had moderate limitations in CPP.  Tr. 967.  Dr. Cott opined that despite Plaintiff's concentration difficulties, Plaintiff can follow three-step directions.  Tr. 968.  Dr. Cott included that "although [Plaintiff] reports significant mental health issues, there is no evidence of significant mental health treatment.  Although [Plaintiff] does have physical impairment[s] in addition to mental impairments."  Tr. 968.  Based on Dr. Cott's opinion, the ALJ found that "it does not appear that the combination of [Plaintiff's] physical and mental impairments would preclude sustained work activity within the established [RFC]."  The ALJ disagreed with Dr. Cott's finding of higher mental health issues but implemented her same moderate CPP limitations.  Tr. 968.  Although the ALJ did not replicate Dr. Cott's opinion verbatim in crafting the RFC, such a minor discrepancy does not warrant remand.  *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a [source's] opinions verbatim; nor is the ALJ required to adopt the [source's] limitations wholesale."); *Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight.").

An ALJ adequately accounts for a Plaintiff's moderate CPP limitations by assigning persuasive value to a source's opinion regarding those limitations and adopting the source's opined limitations into the RFC.  *See Sizemore*, 878 F.3d at 80–81 (affirming an ALJ's decision where: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned persuasive value to the opinion).  Accordingly, the Court determines that the opinions of Drs. Ewell and Cott "provided substantial support" for the RFC assessed in this case and the ALJ's adoption of such permits meaningful review.  *Id.* at 81; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.]  Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

Furthermore, Plaintiff's argument that the ALJ ran afoul of *Mascio* falls short.  In *Mascio*, the ALJ found that the claimant, who suffered from an adjustment disorder, had moderate limitations in concentration, persistence and pace.  But unlike here, the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain [CPP]" when he conducted the function-by-function analysis.  780 F.3d. at 633.  "[B]ecause the ALJ ... gave no explanation" for these omissions, "a remand [was] in order."  *Id*. at 638.  *See Shinaberry*, 952 F.3d at 121 (affirming the ALJ's decision when the ALJ "sufficiently explained why the mental limitation to simple, routine, repetitive tasks accounted for [claimant's mental] disability and her moderate limitations in [CPP]").

In sum, the Court finds the ALJ's decision rested upon substantial evidence and reflected a robust examination of Plaintiff's record when determining the RFC.  Additionally, Plaintiff

identifies no harmful error resulting from the ALJ's failure to provide a narrative discussion explaining the RFC's accommodation of Plaintiff's CPP limitations. *See generally* ECF 11. Nor does Plaintiff identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. *See generally id.* Therefore, Plaintiff has not met their burden of proof. *See Hancock*, 667 F.3d at 472 ("The claimant has the burden of production and proof in Steps 1–4."). Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by the alleged "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636. For the reasons stated above, a meaningful review is possible and yields no reversible error.

## V. CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge